UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KEVIN ADELSTEIN, *on behalf of himself and all others similarly situated*, | CASE NO. 1:23-cv-00067 |
| Plaintiff, | |
| | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | |
| WALMART, INC., | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Before the Court is Plaintiff Kevin Adelstein's Motion to Remand this case to the Cuyahoga County Court of Common Pleas. (Doc. No. 8.) Defendant Walmart, Inc. ("Walmart") filed a brief in opposition (Doc. No. 12),[1] and Plaintiff replied (Doc. No. 13). For the following reasons, Plaintiff's Motion to Remand is DENIED.

### I. Factual and Procedural Background

Plaintiff's First Amended Complaint alleges that Walmart improperly charged more for in-store purchases when the same items could be purchased online for less. (Doc. No. 1-1 at 20.)[2] By way of example, on August 8, 2022, Plaintiff visited Walmart's website, Walmart.com, and noted the following items and sale prices: "Preen Extended Control Weed Preventer ("Preen") listed at $19.97; the Ortho Ground Clear Weed Concentrate ("Ortho) listed at $15.99; and the Meguiars Hybrid Ceramic Wax ("Wax") listed at $15.95. (*Id.*) Plaintiff then went to an

---

[1] In its opposition to Plaintiff's Motion to Remand, Walmart requested oral argument. The Court finds that oral argument is not necessary to resolve the pending motion.

[2] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

1

Ohio Walmart that same day. (*Id.*) The listed prices for the same items were as follows: $21.77 for Preen ($1.80 more than the price listed online); $19.97 for Wax ($4.02 more than the price listed online); and $23.87 for Ortho ($7.88 more than the price listed online). (*Id.* at 21-22.) Plaintiff purchased these items in the store and, as a result, claims that he was overcharged by $13.70.[3]

On August 19, 2022, Plaintiff filed an individual action against Walmart in the Bedford Municipal Court, Cuyahoga County. (*See id.* at 97-110.) On December 19, 2022, Plaintiff filed a First Amended Complaint on behalf of himself and others similarly situated. (*See id.* at 20-37).[4] Plaintiff seeks to certify two classes:

> **"CSPA Sale at Over Advertised Price":** All customers, who within two (2) years prior to the date of filing of the original complaint (August 19, 2022) to the date this case is certified, purchased a product in Ohio from Walmart, and were charged a price greater than the price advertised on Walmart.com.
>
> **"Fraud Sale at Over Advertised Price":** All customers, who within four (4) years prior to the date of filing of the original complaint (August 19, 2022) to the date this case is certified, purchased a product in Ohio from Walmart, and were charged a price greater than the price advertised on Walmart.com.

(*Id.* at 24.) These classes will be referred to as the "CSPA Sale Class" and the "Fraud Sale Class," respectively.

On January 13, 2023, Walmart noticed removal to this Court pursuant to the Class Action Fairness Act ("CAFA"). (Doc. No. 1.) Walmart asserts that removal is appropriate because it filed its notice within thirty days of receiving the First Amended Complaint and all CAFA

---

[3] Plaintiff purchased nine items on August 8, 2022, but alleges he was overcharged only for the three items identified in the First Amended Complaint. (*See* Doc. No. 1-1 at 41.)

[4] Walmart states that Plaintiff served a copy of the First Amended Complaint and his motion to transfer this case to the Cuyahoga County Court of Common Pleas on December 16, 2022. (Doc. No. 1 at 2, n.1.) The state court's docket reflects that these documents were filed on December 19, 2022. (*Id.*)

2

requirements are met. Specifically, Walmart asserts that the parties are minimally diverse, the putative class contains at least 100 members, and the amount in controversy exceeds $5 million. (*See id.*).

Plaintiff does not dispute minimal diversity. Instead, he asserts that Walmart has not shown that the class size exceeds 100 or that the amount in controversy exceeds $5 million. (*See* Doc. No. 8.)

## II. Law and Analysis

### A. Legal Standard

"[F]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). As such, federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). CAFA provides federal district courts with "original jurisdiction to hear a class action if the class has more than 100 members, the parties are minimally diverse, and the matter in controversy exceeds the sum or value of $5,000,000." *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 282 (6th Cir. 2016). Because "Congress enacted CAFA to facilitate adjudication of certain class actions in federal court," "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("CAFA's provisions should be read broadly with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." (internal quotations and citations omitted)).

A party seeking to remove an action bears the burden of establishing federal subject matter jurisdiction. *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999). If a plaintiff challenges a defendant's allegations in support of removal, "both sides submit proof and

3

the court decides, by a preponderance of the evidence, whether the [] requirement has been satisfied." *Dart Cherokee*, 574 U.S. at 88. To establish proof by a preponderance of the evidence, the party bearing the burden must "prove that something is more likely than not" or that the evidence "when considered and compared with that opposed to it, has more convincing force and produces in your mind[']s belief that what is sought to be prove is more likely than not true." *Williams v. Eau Claire Pub. Sch.*, 397 F.3d 441, 446 (6th Cir. 2005).

### B. Discussion

#### 1. Numerosity

Numerosity is established when it is sufficiently demonstrated that the litigation involves "monetary relief claims of 100 or more persons" that are proposed to be tried jointly because they "involve common questions of law and fact." *Adams v. 3M Co.*, 65 F.4th 802, 803 (6th Cir. 2023) (quoting 28 U.S.C. § 1332(d)(11)(B)(i)).

In support of removal, Walmart attached the declaration by Nate Lyman, a Senior Director II, Pricing Strategy and Analytics for Walmart U.S. to provide context and detail about the scope of Plaintiff's claims. (*See* Doc. No. 1-2 ("Lyman Decl.") at ¶ 1.) Lyman states that in the past two years more than 40 million visits to Walmart's website have originated in Ohio. (*Id.* ¶ 5.) Lyman supplemented certain figures and stated that Ohio's Walmart stores processed over 5 million transactions in the past two years and over 900 million in the past four years. (*Id.* ¶ 6; Doc. No. 12-1 ("Supplemental Lyman Decl.") at ¶¶ 4-5.)[5]

---

[5] In its opposition to Plaintiff's Motion to Remand, Walmart stated that Lyman had "significantly understated the total number of consumer transactions that occurred at Walmart stores in Ohio in the past four years" and attached a Supplemental Declaration of Nate Lyman in support of its opposition to Plaintiff's Motion to Remand that contained updated figures. (Doc. No. 12-1 at ¶¶ 4-6.) Because Congress contemplated that "a federal court may have to engage in some fact-finding" when making CAFA jurisdictional determinations, the Court "will consider evidence

In argument, Walmart also highlights that Plaintiff's First Amended Complaint affirmatively alleges that the class size is "anticipated to be in the thousands." (Doc. No. 12 at 167 (citing Doc. No. 1-1 at 25).) This allegation alone is sufficient to satisfy the numerosity requirement, Walmart asserts. (*Id.* at 167-68.)

For Plaintiff's part, he emphasizes that "[e]ach class is limited to persons who 'were charged a greater price than the price advertised by Walmart.'" (Doc. No. 8 at 134.) As such, Plaintiff disputes Walmart's evidence because it lacks information "as to the number of people that are involved in the transactions identified, or, more importantly . . . how many people may have had a transaction fall within the putative class." (*Id.*) However, Plaintiff acknowledges that he "never stated the number of class members was below 100." (Doc. No. 13 at 179 n. 1).

The Court finds that CAFA's numerosity requirement is satisfied. The Third Circuit has persuasively held that where a plaintiff explicitly asserts in his or her complaint that the putative class meets CAFA's numerosity requirements, defendants are "entitled to rely on this fact as an admission in favor of jurisdiction." *Judon v. Travelers Property Cas. Co. of* America, 773 F.3d 495, 505 (3d Cir. 2014) (finding numerosity satisfied based on plaintiff's allegation of "at least 200 members of the proposed class" and plaintiff never disavowed the allegation in her complaint). In *Family Tacos, LLC v. Auto Owners Ins. Co.*, a court in this district took a similar approach, finding that the defendant "carrie[d] its burden to meet [CAFA's] jurisdictional threshold because the complaint seeks certification of a nationwide class, which Plaintiff alleges 'number[s] at least in the many thousands and possibly millions . . . .'" No. 5:20-cv-01922, 2021 WL 110797, at *3 (N.D. Ohio. Jan. 21, 2021). So too here. Plaintiff alleged that the class size

---

beyond the first set of pleadings in order to determine jurisdiction." *McClendon v. Challenge Fin. Investors Corp.*, No. 1:08CV1189, 2009 WL 589245, at *7 n.7 (N.D. Ohio Mar. 9, 2009).

was "anticipated to be in the thousands." (*See* Doc. No. 1-1 at 25.) This allegation is sufficient evidence on which Walmart can rely to satisfy CAFA's numerosity requirement.

### 2. Minimal Diversity

Minimal diversity requires that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Plaintiff is a citizen of Ohio. (Doc. No. 1 at 3-4; Doc. No. 1-1 at 20.) Walmart is a Delaware corporation with its principal place of business in Arkansas and is therefore a citizen of both Arkansas and Delaware. (Doc. No. 1-2 ("Lyman Decl.") at ¶ 3.) That the parties are minimally diverse is not in dispute.

### 3. Amount in Controversy

CAFA also requires that the amount in controversy be likely to exceed $5,000,000. 28 U.S.C. § 1332(d)(2). When a complaint seeks an indeterminate amount of damages, "the removing defendant has the burden of demonstrating, by a preponderance of evidence, that the amount in controversy requirement has been met." *Brown v. Jackson Hewitt, Inc.*, No. 1:06-cv-2632, 2007 WL 642011, at *2 (N.D. Ohio Feb. 27, 2007) (citing *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001)). A defendant is not required to "research, state and prove the plaintiff's claim for damages" to a legal certainty. *Hayes*, 266 F.3d at 572 (citing *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993) (abrogated on other grounds)); *see also Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397-400 (9th Cir. 2010) (finding a defendant had satisfied its burden by supplying "an affidavit to show that the potential damages *could* exceed the jurisdictional amount" (emphasis added)). To meet this standard, the defendant must plausibly allege that the class claim exceeds $5 million. *Dart Cherokee*, 574 U.S. at 88.

Walmart offers a series of calculations demonstrating how the $5 million jurisdictional requirement is plausibly met. First, Walmart points out that Plaintiff alleged that his individual

6

damages from his August 2022 purchases at Walmart total $13.70. (Doc. No. 1 at 6 (citing Doc No. 1-1 at 21-22).) Assuming that Plaintiff's overpayment represents the average damage amount for class members, Walmart argues that the amount in controversy requirement is satisfied if either the CSPA Sale Class contains 182,500 members *or* the Fraud Sale Class contains 91,250 members. (*See id.* at 6-7; *see also* Doc. No. 12 at 162 n.4 (citing *McClendon*, 2009 WL 589245 at *10 n.11 (noting that the court only focuses on the broadest class for purposes of CAFA jurisdictional analysis)). Walmart asserts that these scenarios are plausible, given the information in Lyman's Declarations regarding the number of transactions that have occurred at Ohio Walmarts in the past two and four years. (*See* Doc. No. 1 at 7 (citing Lyman Decl. at ¶¶ 4-6).) Put differently, Walmart contends that if class members overpaid by approximately $13, the class size "need only be 0.0145% of the total number of transactions to exceed" $5 million. (Doc. No. 12 at 164, 164 n.6.)

Second, Walmart asserts that even if Plaintiff's overpayment is above average for the class, Walmart has still shown by a preponderance of the evidence that the amount in controversy is met. According to Walmart, Plaintiff has alleged that Walmart's overcharging practices are "pervasive." (Doc. No. 1 at 7.) Given the number of transactions in Ohio Walmarts in the past four years, Walmart argues that "each transaction would only need to involve an overcharge of 50 cents to reach the jurisdictional threshold." (*Id.*).

Lastly, Walmart emphasizes that Plaintiff seeks statutory damages, treble damages, and attorneys' fees – all in addition to the compensatory damages he seeks – which Walmart alleges "could be millions of dollars" alone. (*Id.* at 8).

Plaintiff admittedly "does not quarrel with the math" in Walmart's notice of removal. Instead, he argues that the "series of hypothetical calculations presented by counsel" does not

7

constitute evidence. (Doc. No. 8 at 133, 135-136). Plaintiff urges that Walmart cannot use the First Amended Complaint's allegations regarding the pervasiveness of Walmart's overcharging practices to justify its overinclusive calculations of the amount in controversy. (*Id.* at 135-36). To Plaintiff, Walmart has failed to identify "the potentially relevant total number of transactions" "where a consumer was charged more for an in-store purchase than the price stated on the website." (Doc. No. 13 at 184). Instead, Walmart has provided the Court only with the total number of transactions and sales during the class period, a figure that is so "grossly over-inclusive to render it meaningless." (*Id.* at 180). Plaintiff argues that Walmart's calculations misconstrue the First Amended Complaint as seeking "a refund of the entire sales price" when it requests "only disgorgement of the overcharge in-store vs. the advertised price, plus sales tax, along with available statutory and common law remedies." (*Id.*) In sum, Plaintiff argues that Walmart's effort to show that the amount in controversy exceed $5 million "does not constitute evidence of the specific class damages in this case." (*Id.*)

The Court finds that Walmart has met its burden of proving by a preponderance of the evidence that the amount in controversy exceeds $5 million. Plaintiff's First Amended Complaint alleges that Walmart's "custom and practice" of overcharging was both "regular" and "routine." (Doc. No. 1-1 at 22, 25, 29). Plaintiff further alleges that his "claims are not just typical but identical to class members." (*Id.* at 26). According to Plaintiff's allegations, he was overcharged a total of $13.70 for three of the items he purchased. (Doc. No. 12 at 160). Taking these allegations as true and applying them to the information provided in Lyman's declarations, it is more likely than not that the amount in controversy exceeds $5 million. If Walmart overcharged for items sold across 900 million transactions in the past four years, the amount in controversy requirement is met. (Doc. No. 12-1 at 5-6.)

As for Plaintiff's challenge that Walmart's calculations overstate the size of the class and the amounts at issue, even overinclusive figures can establish CAFA jurisdiction. *See, e.g.*, *Raska v. Johnson & Johnson*, 719 F.3d 884, 887-88 (8th Cir. 2013) (finding affidavit detailing total sales was overinclusive but sufficient to establish the amount in controversy requirement by a preponderance of the evidence); *Lewis*, 627 F.3d at 399 (finding affidavit detailing "entire billings" was sufficient to meet the amount in controversy requirement because it was "simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability"); *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) (finding that total credit card charges established CAFA jurisdiction despite uncertainty regarding what portion of charges were unauthorized).

As the Seventh Circuit held in *Spivey*, "uncertainty differs from impossibility," meaning a "case belongs in federal court unless it is legally impossible for the plaintiff to recover" at least $5 million. 528 F.3d at 986. Walmart has acknowledged that it is uncertain how many of the 900 million transactions at Ohio Walmarts in the past four years involved overcharging, but its reliance on these figures is reasonable. The Court cannot conclude that it is legally impossible for recovery here to exceed $5 million. Therefore, this case belongs in federal court.

Plaintiff's demand for evidentiary certainty misunderstands what the law requires. Though Plaintiff suspects Walmart can provide more detailed information about overcharging or even an analysis of the specific products Plaintiff purchased, (*see* Doc No. 13 at 177, 183), Plaintiff's expectations exceed CAFA's requirements. Walmart is not required to research, state or prove Plaintiff's claim regarding overcharging at this stage. *See Hayes* 266 F.3d at 572. Once Walmart provided some evidence in support of its assertion that the claims here would likely exceed $5 million, which it did, Plaintiff was obligated to refute Walmart's numbers with

9

numbers of his own. *See Dart Cherokee*, 574 U.S. at 88. Instead, Plaintiff has only submitted arguments to refute Walmart's calculations. This is not enough.

Finally, any remaining doubts regarding the amount in controversy requirement are resolved by Plaintiff's request for punitive and treble damages as well as attorneys' fees in this case.

### III. Conclusion

For the reasons above, Plaintiff's Motion to Remand (Doc No. 8) is DENIED.

**IT IS SO ORDERED.**

**Date**: August 30, 2023

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE